UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MANAMAN GRANT,

                Petitioner,

                                              05 Civ. 8994 (RPP)
                                              03 Cr. 725 (RPP)

        - against -

                                        **OPINION AND ORDER**

UNITED STATES OF AMERICA,

                Respondent.
-----------------------------------------------------------X

**Robert P. Patterson, Jr., U.S.D.J.**

        Petitioner, Manaman Grant ("Petitioner"), seeks to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("§ 2255") on the ground that he was denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution.

## A. Background

        On July 17, 2003, an indictment was filed against Petitioner, Manaman Grant. Count one charged that Petitioner had conspired from in or about 1996 up to and including May 2003 to distribute and to possess with intent to distribute more than one kilogram of heroin and more than five kilograms of cocaine; count two charged that Petitioner had distributed and possessed with intent to distribute approximately three kilograms of heroin in January 2003; count three charged that Petitioner had distributed and possessed with intent to distribute approximately ten kilograms of cocaine in January 2003; and count four charged that Petitioner committed money laundering.[1]

---

[1] The statutes under which Petitioner was charged were 21 United States Code §§ 846, 812, 841(a) (1) and 841(b) (1) (A) and 18 U.S.C. § 1957 and 2.

On January 9, 2004, Petitioner, represented by trial counsel, pled guilty to the indictment pursuant to a plea agreement with the Government  (Plea Agreement ("Plea"), dated Jan. 5, 2004.)  The plea agreement stipulated that Petitioner was responsible for "the distribution of approximately 7 kilograms of heroin and 15 kilograms of cocaine," (Plea at 2.), and that, based on these amounts, Petitioner's stipulated Guidelines range was 135 to 168 months imprisonment.  (Id. at 5.)  Petitioner also agreed to forfeit proceeds from his drug dealing of approximately $1,000,000 and the proceeds from his money laundering of $190,000. (Id. at 5-6; Plea Transcript, dated January 9, 2004 ("Plea Tr.") at 23.)  Petitioner further agreed that he "[would] not file a direct appeal from, nor otherwise litigate under Title 28, United States Code, Section 2255 and/or Section 2241, any sentence within or below the Stipulated Sentencing Guidelines Range" of 135-168 months.  (Plea at 5.)

On September 28, 2004 Petitioner, as a first offender, was sentenced to 135 months in prison on counts one, two and three, and a concurrent sentence of 120 months on count four to be followed by five years of supervised release and a mandatory special assessment of $400 — $100 on each count. (Sentencing Transcript ("Sentencing Tr."), dated September 28, 2004 at 23.)  The Court also notified the Defendant as follows:

> Since there was a plea agreement, [your attorney] probably cannot file a
> notice of appeal on your behalf, Mr. Grant.  So if you wish to file a notice
> of appeal you must do it yourself.  All you have to do is write a letter to
> the court, the Southern District of New York, 500 Peal Street, saying you
> wish to appeal your sentence or your conviction, and that is sufficient. But
> if you don't do it within ten days of today, you waive your right, and the
> Court of Appeals won't hear your appeal.  So the notice of appeal has to
> be received within that ten-day period. So if you wish to do that, please do
> it yourself.  Don't rely on [your attorney] to do it for you.

(Id. at 26.)  Neither Petitioner nor his trial attorney filed a notice of appeal.

2

On October 24, 2005, Petitioner filed this motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[2]  On March 23, 2006, the Government filed its Opposition.  Petitioner filed a Rebuttal to the Government's Reply on May 1, 2006 ("Pet.'s Rebuttal"). On July 28, 2006, the Court ordered an evidentiary hearing to determine whether Petitioner had instructed his attorney to file a notice of appeal.[3]  See Grant v. United States, 05 Civ. 8994, dated July 28, 2006.  Daniel Meyers, Esq., was appointed to represent Petitioner for purposes of the hearing, which was held on January 25, 2007. The Government filed a post-hearing brief on February 26, 2007, Petitioner responded on March 13, 2007.  For the reasons that follow Petitioner's motion is denied.

### B.  Discussion

Petitioner's only legal basis for challenging his conviction and sentence is that he received ineffective assistance of counsel from the attorney who represented him during both the plea and sentencing hearings.  Petitioner claims that this ineffective assistance of counsel affected (1) his guilty plea, (2) his sentence and (3) his failure to file a direct appeal.

Petitioner proceeded pro *se* in submitting his petition and brief.[4]  Accordingly, his submission will be "liberally construed in his favor," Simmons v. Abruzzo, 49 F. 3d 83, 87 (2d Cir. 1995) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)), and read to "raise

---

[2] Section 2255 provides in pertinent part:
> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the grounds that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct sentence.

[3] The reasons for the evidentiary hearing are discussed later in this opinion.  See infra § B(3).

[4] As mentioned above, Petitioner had counsel appointed to represent him at the evidentiary hearing, but his initial Petition was filed Pro Se.

the strongest arguments that they suggest." Graham v. Henderson, 89 F.2d 75, 79 (2d Cir. 1996) (internal citation omitted).

### 1. **Ineffective Assistance Affecting Petitioner's Plea**

Petitioner claims that, due to ineffective assistance of trial counsel, his plea was not knowing and voluntary.  He also alleges that his attorney's failure to file a bail application, or a motion to suppress constitutes ineffective assistance.  (See Pet.'s Memorandum of Law, dated October 24, 2005 ("Pet's. Mem.") at 7.)

To establish a claim for ineffective assistance of counsel, a petitioner must demonstrate (1) that his counsel's performance was deficient and (2) that counsel's deficient performance prejudiced the petitioner.  See Strickland v. Washington, 466 U.S. 668, 687 (1984).  The performance of counsel is deficient if it "fell below an objective standard of reasonableness" under "prevailing professional norms."  Id. at 688.  However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690.  To show prejudice, a defendant who pleads guilty must also show that there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial.  Hill v. Lockhart, 474 U.S. 52, 59 (1985).

### a.   **Ineffectiveness surrounding Petitioner's Guilty Plea.**

Petitioner makes several claims of ineffectiveness that he now alleges led to an involuntary guilty plea.  He claims that his counsel (1) only gave Petitioner five minutes to review the plea agreement before his plea hearing and instructed him to answer only yes or no to the Court's questions, (2) failed to object to the admission in the plea agreement of "the extra four kilograms of heroin," (3) failed to explain the money

4

laundering statutes or forfeiture statutes or defenses to these charges, and (4) failed to

object to the time frame of the plea or indictment after Petitioner requested such an

objection (Pet.'s Mem. at 7.)   He also claims that (5) his attorney threatened him "with a

death sentence if [he] did not enter a plea of guilty."  (Id.)  In Petitioner's Rebuttal, he

restates his original arguments and states that his plea was "entered under duress"

because his wife was five months pregnant.  (Pet.'s Mem. of Law in Rebuttal to the

Govt's Opposition, dated May 1, 2006 ("Pet.'s Rebuttal") at 3.)

However, the record from Petitioner's plea and sentencing hearings belie these

allegations of threats, duress, and failure to advise, and Petitioner presents no factual

evidence to back up his statements.[5]

At Petitioner's plea allocution, he testified that he was a college graduate and that

he had never been treated for mental illness or addiction to alcohol or narcotic drugs and

that he had not used drugs, prescriptions or alcoholic beverages within the last two days.

(Plea Tr. at  3, 5).  During the plea allocution, Petitioner gave the following sworn

testimony:

> THE COURT:          Have you discussed the charges in the indictment
>                     fully with your lawyer?
> DEFENDANT:          Yes, I have.
> THE COURT:          Has he explained those charges to you?
> DEFENDANT:          Yes, he has.

---

[5] Petitioner has no factual support for his claims because they are meritless.  (1) The plea agreement was a later version of an earlier plea agreement that Petitioner had had a chance to review.  (2) The extra four kilograms were based on Defendant's tape recorded admission that he had another four kilograms to sell. (See PSR at ¶ 29.) (3)Even if this allegation is true, there is no prejudice to Petitioner because the Court explained the violations to him (see Plea Tr. at 19-20) and his sentence was computed based on the narcotics violations not the money laundering.  (See PSR at ¶ (4); sentencing Tr. at 23.)  An objection to the time frame of the plea and indictment would have been meaningless since a violation of the narcotics law within the time frame of the conspiracy was all the proof necessary. (5) This claim is simply incredible, and Petitioner testified that he had not been forced into pleading guilty. (See Plea Tr. at 4.)
.

> THE COURT:  Are you fully satisfied with . . . your attorney and
> with the representation and legal advice he's given
> you in this case?
>
> DEFENDANT:  Yes, I am.

(Id. at 4.)  Petitioner testified that he had read his plea agreement and that it contained the

terms of his plea agreement with the government. Petitioner further testified that no one

had, in any way forced, him to plead guilty and that no promises or assurances, other than

those contained in his plea agreement, had been made to him to induce his plea of guilty.

(Id.)  Finally, Petitioner testified that he understood that, under the plea agreement, he

had "waived [his] right to appeal [his] sentence or engage in post-conviction litigation, as

long as that sentence is between the guidelines rage of 135 to 168 months of

imprisonment." (Id. at 7.)  Based on the totality of Petitioner's testimony the Court found

that Petitioner's "plea of guilty is a knowing and voluntary plea." (Plea Tr. at 5.)  At his

sentencing of September 28, 2004, Petitioner reaffirmed his approval of his attorney's

effectiveness and commended the performance of his attorney testifying that "I also

would like to thank my lawyer for everything he's done for me."  (Sentencing Tr. at 11.)

Following the sentencing hearing, Petitioner wrote his attorney a letter, thanking him

again for his representation.  (See Letter from Manaman Grant, dated September 29, 2004

("Grant Letter").)

The Court relied on Petitioner's sworn statements in finding that his guilty plea

was knowing and voluntary and based on adequate representation by trial counsel.

Petitioner's habeas petition presents no factual support to rebut the Court's reliance on

those sworn statements.  See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("[T]he

representations of the defendant at [a plea colloquy] . . . constitute a formidable barrier in

any subsequent collateral proceedings. Solemn declarations in open court carry a strong

presumption of verity. The subsequent presentation of conclusory allegations
unsupported by specifics is subject to summary dismissal. . . ."); see also United States v.
Torres, 129 F.3d 710, 715 (2d Cir. 1997) ("A defendant's bald statements that simply
contradict what he said at his plea allocution are not sufficient grounds to withdraw the
guilty plea."). Petitioner has offered little more than conclusory and self-serving
statements, often contradicted by the record, as proof that his plea was involuntary due to
ineffective assistance of counsel.

### b.  Counsel's failure to apply for bail or file a motion to suppress

Petitioner's claims regarding trial counsel's failure to apply for bail or move to
suppress evidence recovered in a search, are not appealable because they do not involve
the voluntary nature of his plea.  As the Second Circuit held in United States  v. Torres
129 F.3d at 715 -716:

> A defendant who pleads guilty unconditionally while represented by
> counsel may not assert independent claims relating to the deprivation of
> constitutional rights that occurred prior to the entry of the guilty plea. . . .
> Rather, a defendant may only attack the voluntary and intelligent character
> of the guilty plea by showing that the advice he received from counsel was
> not within acceptable standards.

Id. (internal quotations omitted).

Moreover, neither claim has any merit.  the Presentence Report ("PSR") makes
clear that the Government had probable cause for the search --  in the form of a
confidential witness' testimony, backed up by recorded conversations with Defendant --
that demonstrated that Petitioner had been engaged for a considerable period of time in a
significant narcotics conspiracy.  (See PSR, dated April 6, 2004 at 7.)  That information
was also more than enough to convince counsel that a bail application would not

overcome the statutory presumption against granting bail to a defendant facing serious narcotics charges.  See 18 U.S.C. § 3142(e), (f)(1)(C).

### 2. Ineffectiveness claims Regarding Sentence

Petitioner alleges several errors by his attorney that he claims affected his sentence.  These claims include that (1) counsel failed to respond to Petitioner's questions regarding a "safety-valve" departure under the United States Sentencing Guidelines ("USSG"); (2) counsel failed to file objections to the Presentence Investigation Report ("PSR"); (3) counsel "led [Petitioner] to believe that he was preserving constitutional guidelines issues"; (4) counsel did not inform Petitioner that he would be able to make a statement at the sentencing hearing to the Court; (5) counsel failed to file for a continuance of the sentencing hearing based on the Supreme Court's decision in U.S. v. Blakely; (6) counsel "coerced" petitioner to go ahead with the sentencing hearing; (7) counsel's performance at the sentencing hearing was deficient; and (8) counsel failed to provide Petitioner with documents relating to the case.  (Pet.'s Mem. at 7.)  Because Petitioner waived his right to appeal his sentence, the Court need not consider these allegations, which, in any event are meritless.[6]

---

[6] Specifically, as to claim (1), trial counsel attempted to negotiate a safety valve departure for Petitioner with the Government, and in fact, got the date of the sentencing hearing adjourned for that purpose.  (See Counsel's Letter to the Court dated September July 6, 2004.)  Claim (2) is directly contradicted by the PSR, which lists a number of objections made by defense counsel.  (See PSR, dated April 6, 2004 at 16.)  As to claim (3), counsel delayed the sentencing hearing until after United States v. Blakely was decided, in order to preserve whatever rights Defendant might have regarding that case.  (See Sentencing Tr. At 4.)  Claim (4) is meritless because the Court informed Petitioner at his plea hearing that he would have an opportunity to make a statement at his sentencing hearing.  (See Plea Tr. at 25.) As to claim (5), Blakely presented no reason to further delay the sentencing hearing in light of Petitioner's plea agreement, in which he stipulated to specific quantities of heroin and cocaine.  Claim (6) is contradicted by the fact that counsel managed to delay the sentencing hearing from April 13, 2004 until September 28, 2004; Claim (7) is contradicted by the fact that Petitioner was sentenced to the lowest possible term of imprisonment provided by the plea agreement. Finally, Petitioner provides no factual support for claim (8), which is, again, of no consequence, since he received the most favorable sentence available to him.

Petitioner's plea agreement contained an appeal waiver in which he agreed not to "file a direct appeal from, nor litigate under [§ 2255] any sentence within or below the Stipulated Sentencing Guidelines Range (135 to 168 months)."  (Plea at 5.)  Such a waiver is enforceable against ineffective assistance claims that relate to Petitioner's sentence, so long as counsel was not ineffective during the plea process that led to the waiver.  See United States v. Monzon, 359 F.3d 110, 116 (2d Cir. 2004) ("Where the record clearly demonstrates that the defendant's waiver of her right to appeal a sentence within an agreed Guidelines range was knowing and voluntary, that waiver is enforceable."); U.S. v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993) ("In no circumstance . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless.").

In this case, the record clearly shows that Petitioner knowingly and voluntarily waived his right to appeal his sentence.  During the plea allocution the Court specifically questioned Petitioner about his understanding of the plea waiver:

| | |
|---|---|
| THE COURT: | [D]o you understand that under your agreement, you have waived your right to appeal your sentence or engage in post-conviction  litigation, as long as that sentence is between the guideline range of 135 to 168 months? |
| THE DEFENDANT: | Yes. |

Petitioner presents no evidence to rebut his sworn statement that his appeal waiver was knowing and voluntary.  Thus, based on his sworn statement to the Court at the time of his sentence, his plea waiver is effective and prevents him from challenges to his sentence.  He cannot eschew his appeal waiver by framing his sentencing arguments in

the form of claims of ineffective assistance of counsel.  See United States v. Djelevic, 161 F.3d 104, 107 (2d Cir. 1998) ("[The defendant] claims that his waiver should not bar consideration of his appeal because counsel was ineffective not at the time of the plea, but at sentencing. We emphatically reject this contention.");  Santiago-Diaz v. United States, 299 F.Supp.2d 293, 299 (S.D.N.Y. 2004) ("A claim of ineffective assistance of counsel is not a vehicle for a criminal defendant to attempt an end-run around a knowing and voluntary waiver of his right to appeal his sentence.").

Moreover, given that Petitioner was sentenced to the lowest term of imprisonment agreed to in his plea agreement, whatever errors his attorney may have made at the sentencing hearing did not harm Petitioner.

### 3. **Failure to File a Notice of Appeal**

Petitioner claims in his petition that he instructed counsel to file a notice of appeal.  He submitted an affidavit from his wife, Deborah Menjivar, stating that she had called Petitioner's attorney the day after the sentence and instructed him to file an appeal on behalf of her husband.  The government responded with an affidavit from Petitioner's trial counsel stating that he was never asked to file a notice of appeal.

In Roe v. Flores-Ortega,  528 U.S. 470 (2000), the Supreme Court held that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable," id. at 477, and that where counsel's error leads to "the forfeiture of a proceeding itself," prejudice will be presumed. Id. at 483-84.  In United States v. Campusano, 442 F.3d 770 (2d Cir. 2006), the Second Circuit held that the "Flores-Ortega presumption of prejudice applies to a defendant who has waived appeal in a plea agreement."  Id. at 773  The Second Circuit held that in situations

where a defendant claims that he instructed his attorney to file an appeal, a district court

should hold an evidentiary hearing to discern whether such an instruction was given.  If a

defendant shows that he did in fact instruct his attorney to appeal, the defendant will be

entitled to a new direct appeal, regardless of whether he raises meritorious issues.  See id.

at 777 ("The concern animating Flores-Ortega that defendants not be forced by attorney

error to accept the forfeiture of a proceeding itself--is a powerful one even where the

defendant is the only person who believes an appeal would be worthwhile."(internal

quotations omitted)).

Based on Campusano's dictates, the Court ordered an evidentiary hearing, which

was held on January 25, 2007.

At the hearing, Ms. Menjivar testified that on September 29, 2004, one day after

Petitioner's sentencing hearing, she received a call from him, asking her to call trial

counsel about an appeal.  (Transcript dated January 25, 2007 ("1/25 Tr.") at 15.)  She said

that she spoke to trial counsel on September 29 and October 1, 2004, and that she

discussed her husbands appeal with him in both of these conversations: "I remember

calling [counsel] to let him know that my husband wanted to file an appeal."  (Id. at 21.)

According to Menjivar, trial counsel told her that "because [Petitioner] was already under

a plea agreement, and being that he was under that, he had waived the right to an appeal."

(Id. at 21.)  She testified that when she asked trial counsel why the "judge had said that

[Petitioner could] file for an appeal within ten days," he replied "that the judge had to say

that, that it was part of the proceedings."  (Id. at 22.)[7]

---

[7]Ms. Menjivar reiterated this testimony on cross-examination, (see id. at 29), and redirect.  (See id. at 30-32.)

Petitioner testified that he did ask his wife to call trial counsel and tell him that he wanted to file an appeal. (Id. at 46.) He testified that Menjivar told him that "[t]he substance of [her conversation with trial counsel] was that he said I cannot appeal. . . . He said I have a plea agreement and I can't appeal the sentence." (Id. at 46.) He then asked her to call trial counsel back to "ask him if I should do it myself; the judge said for me to do it myself; should I do it myself?" (Id. at 51.) He testified to the hearsay statement that "she called [trial counsel] back and asked him that." He stated that "again she told me that he said you can't file an appeal, you waived your rights . . . the judge is required to say that." (Id. at 52.)

The Government confronted Petitioner with a letter he had written to trial counsel, dated September 29, 2004, the same day he testified that he told his wife to call and ask about the appeal. The letter thanked trial counsel for his representation at sentencing, and requested a copy of the transcript from the sentencing, as well as forms relating to his wife's power of attorney, but did not mention the appeal. Petitioner testified that he hadn't mentioned the appeal in the letter  because the appeal was "not the purpose of the letter." (Id. at 56.) Petitioner testified that trial counsel never directly consulted him about whether or not he wanted to file an appeal subsequent to his September 28, 2004 sentencing hearing. (Id. at 45.)

The Government called Petitioner's trial counsel to the stand and he testified that neither Petitioner nor Petitioner's wife had ever instructed him to file an appeal. (Id. at 68.)[8] He testified that he specifically remembered the telephone conversations that Ms. Menjivar had testified to, and that both those conversations were about another attorney

---

[8] In fact, when asked by the Court whether he recalled Ms. Menjivar calling him to tell him that her husband wanted to file an appeal, trial counsel replied: "I recall that not happening.  If I may answer it that way." (Id. at 69.)

that Petitioner had hired to help him with his Bureau of Prisons designation, and Ms.

Menjivar's power of attorney over her husband's affairs.  (Id.)  Trial counsel stated in no

uncertain terms that had Ms. Menjivar asked him to file an appeal for Petitioner "I

wouldn't have said I couldn't have filed it, because  . . . I could always have filed the

[notice of] appeal on his behalf."  (Id. at 70.)  The only conversation trial counsel recalled

having with Ms. Menjivar about an appeal was immediately following Petitioner's

sentencing hearing, in the courtroom, in which he remembered Menjivar asking what the

judge had meant by saying that "[trial counsel] could not file his appeal for Petitioner,

that if he wanted to, he would have to file it himself."  (Id.)  Trial counsel testified that he

explained to her that "because of the plea agreement . . . the only issue could have been

then whether or not there was ineffective assistance of counsel, in that case it could be

pursued either with another lawyer or with me if that's necessary."  (Id. at 71.)[9]  Trial

counsel confirmed Petitioner's testimony that he had not consulted with Petitioner about

an appeal following the sentencing hearing on September 28, 2004  (Id.)

Petitioner's trial counsel also testified that he had asked for several adjournments

of the sentencing because of the Supreme Court's decision in United States v. Blakely,

542 U.S. 296 (2004), and it's forthcoming decision in United States v. Booker, 543 U.S.

220 (2005), but that once the Second Circuit held in United States v. Mincey, 380 f.3d

102,  that district courts were to continue to apply the guidelines,[10] he felt he could not

ask for further adjournment.  (1/25 Tr. at 73.)  He also testified that because Petitioner

---

[9] In his post-hearing brief, Petitioner contends that trial counsel's suggestion that Petitioner could pursue an ineffective assistance of counsel claim "with [him] if that's necessary," was "questionable legal advice, with counsel asserting that he could pursue [such a claim] against himself."  (Post-hearing Letter/Memorandum from Daniel Meyers, Esq., dated March 12, 2007 at 11.)  It is not clear to the Court, however, that trial counsel meant that he would pursue an ineffective assistance claim against himself. More likely, he was suggesting, in a brief conversation with Petitioner's wife, that Petitioner could contact him regarding such a claim.

[10] "[T]he courts of this Circuit will continue fully to apply the Guidelines."  Mincey, 380 F.3d at 106.

had "allocuted to exact amounts [of cocaine and heroin] in his allocution" he did not

believe that *Blakely* was applicable.  (Id.)  When asked by the Court what his purpose had

been in attempting, at the sentencing hearing, to preserve Petitioner's rights in regards to

the Supreme Court's forthcoming decision in *Booker*,[11] trial counsel testified that "I was

trying to preserve whatever rights I could for him without even knowing what those

rights would be."  (Id. at 75.)  He further claimed that he had never discussed preserving

Petitioner's rights with him before the sentencing: "[t]hat was my own attempt to try to

see if there was something that happened in the future, maybe he wouldn't be prejudiced

by him going ahead."  (Id. at 76.)

Upon redirect, Ms. Menjivar testified that she did not recall the Court instructing

Petitioner that he had waived his right to appeal a sentence between 135 and 168 months.

(Id. at 104-05.)[12] She also denied speaking to trial counsel about her husband's appeal

immediately following the sentencing hearing on September 28, 2004.  She testified that

had she known that her husband had waived his right to an appeal, she would "never have

made the call to ask him to file an appeal on [Petitioner's] behalf."  (Id. 103.)

The most likely interpretation of the conflicting testimony at the hearing is that

Ms. Menjivar and trial counsel simply miscommunicated almost three years ago when

these events took place.  It is highly unlikely that trial counsel, an experienced attorney,[13]

would have ignored a specific instruction to file an appeal, and, his testimony that he was

not instructed by Petitioner or Menjivar to do so is credible.  Assuming, Ms. Menjivar did

call trial counsel on September 29, 2004 "to let him know that [her] husband wanted to

---

[11](See Sentencing Tr. at 5 ("[A]t this point we have no request based on Blakely . . . .  But we are not waiving any rights should those rights apply subsequently.").)

[12] The Court so instructed Petitioner on January 9, 2004.  See infra § B(1)(a).

[13] At the hearing, trial counsel testified that he has been a criminal defense attorney in New York since he was admitted to the bar in 1978.  (Id. at 64.)

file an appeal," (Tr. at 21-22),  when counsel  responded that Petitioner had waived the right, she did not instruct him to file the appeal anyway.  Instead, she apparently consulted with her husband who asked her to call trial counsel back to ask about the Court's statement to Petitioner that he *could* file a notice of appeal if he did so in ten days.  (Id. at 46-47.) Even if she did call counsel back to convey her husband's inquiry, (see id. at 32), there is no testimony that she instructed counsel to file an appeal in that second conversation either.  Counsel was not incorrect for advising her that Petitioner had waived his right to appeal, and, under the circumstances elicited at the hearing, had no reason, absent specific direction, to file a notice of appeal in this case.  In fact, he had every reason to believe that his responses to Menjivar's inquiries had satisfied both Menjivar's and Petitioner's questions.

Furthermore, if Petitioner had really been interested in appealing, as he now claims, he could have personally expressed such an interest to trial counsel.  Petitioner does not contend that he tried and was unable to reach trial counsel after his sentencing hearing.  Moreover, Petitioner failed to mention anything about an appeal in the letter he wrote to trial counsel on September 29, 2004, the day after the sentencing hearing. Petitioner did not mention his interest in appealing in this letter, though he did mention several other legal matters.  It is hard to imagine that if Petitioner wanted to appeal he would have left this essential instruction out of his letter.  Moreover, had he wanted to appeal, Petitioner could have followed the Court's express instruction to file a notice of appeal himself.

Finally, though trial counsel confirmed that he did not seek Petitioner out to consult about an appeal, his failure to do so also does not constitute ineffective assistance

15

of counsel.  In certain instances, the Supreme Court requires counsel to consult a

defendant about whether or not to file an appeal:

> [C]ounsel has a constitutionally imposed duty to consult with the
> defendant about an appeal when there is reason to think either (1) that a
> rational defendant would want to appeal (for example, because there are
> nonfrivolous grounds for appeal), or (2) that this particular defendant
> reasonably demonstrated to counsel that he was interested in appealing.

Flores-Ortega, 528 U.S. at 480.  However, "a highly relevant factor" in the analysis is:

> [W]hether the conviction follows a trial or a guilty plea, both because a
> guilty plea reduces the scope of potentially appealable issues and because
> such a plea may indicate that the defendant seeks an end to judicial
> proceedings. Even in cases when the defendant pleads guilty, the court
> must consider such factors as whether the defendant received the sentence
> bargained for as part of the plea and whether the plea expressly reserved
> or waived some or all appeal rights.

Id. [14]

Petitioner had indeed pleaded guilty, had received the lowest sentence bargained

for as part of the plea, and had expressly waived his rights to appeal.  In this situation,

there were no non-frivolous grounds for appeal, and no reason to believe that a rational

defendant would want to appeal.[15] As noted above, Petitioner did not indicate his to trial

counsel that he wanted to file and appeal.  Thus, trial counsel's failure to consult with

---

[14] In Campusano, 440 F.3d 770, the Second Circuit specifically declined to address "whether a waiver would affect the consultation analysis under Flores-Ortega." Id. at 773 n.3.

[15] Petitioner now contends that he wanted to appeal his sentence to preserve the "Blakely issue" for when the Supreme Court issued Booker. (See Meyer Let. at 9 ("Petitioner [wanted] a notice of appeal [to[ be filed so that his rights, as it relate[d] to Booker/Fanfan would not be waived.").)  Though trial counsel did raise the "Blakely issue" at sentencing, and expressed an interest in preserving Petitioner's rights, he cannot be held ineffective for failing to predict that Booker would only apply to direct appeals that remained open in the wake of that decision.  See generally Guzman v. United States,. 404 F.3d 139, 142 (2d Cir. 2005)("It cannot be said that the result in Booker was apparent to all reasonable jurists."); Cooper v. United States, 2007 WL 1176733, *5 (E.D.N.Y. April 20, 2007).  ("The failure of counsel to raise a Blakely v. Washington type argument (i.e. to foresee the holding in United States v. Booker, U.S. 220 (2005)) does not rise to the level of ineffective assistance of counsel."); Muniz v. United States, 360 F.Supp.2d 574, 579 (S.D.N.Y.  2005) ("[B]ecause counsel's performance must be judged as of the time of counsel's conduct, Muniz's attorney cannot be deemed ineffective for failing to anticipate a potential Sixth Amendment challenge [pursuant to] Booker.").

Petitioner directly regarding an appeal does not constitute ineffective assistance of counsel.[16]

## C. Conclusion

For the aforementioned reasons, the petition is denied.  Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. See 28 U.S.C. § 2253(c)(2).


IT IS SO ORDERED.

Dated:  New York, New York
        August 30, 2007


                                           Robert P. Patterson, Jr.
                                           U.S.D.J.

---

[16] As a practical matter, it is also worth noting that an appeal in this case  would not have provided Petitioner any relief on his sentence, since the Second Circuit decided soon after Booker was handed down that defendants who had waived the right to appeal pre-Booker were not eligible for resentencing. See United States v. Oladimeji, 463 F.3d 152, 155-56 (2d Cir. 2006) ("[A] defendant who pleads guilty under an agreement containing an appeal-waiver provision waives the right to a [resentencing] remand. . . . As for defendants who entered a plea agreement with an appeal waiver before the Supreme Court decided Booker, we stated that 'the possibility of a favorable change in the law after a plea is simply one of the risks that accompany pleas and plea agreements. . . . '" (quoting United States v. Morgan, 406 F.3d 135, 137, 156 (2d Cir.2005)).

*Copies of this Opinion and Order Sent to:*

*Counsel for Petitioner:*
Daniel Meyers
350 Broadway, suite 308
New York, NY 10013
Tel: 212-226-4106
Fax: 212-431-0107

*Petitioner:*
Manaman Grant
# 51795 – 054, Montgomery Unit
F.P.C. Maxwell Air Force Base
Montgomery, Alabama 36112

*Respondent:*
Michael J. Garcia, United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007
Attn:  Todd Blanche
Tel: 212-637-2429
Fax: 212-637-2937